## Case No. 6,766.

### HOWE v. ABBOTT.

[2 Story. 190; 2 Robb, Pat. Cas. 99; Merw. Pat. Inv. 312.] [1]

Circuit Court, D. Massachusetts. May Term, 1842.

PATENTS—PATENTABILITY—INFRINGEMENT.

1. The application of an old process to produce a new result, is not a patentable invention; there must be, also, some new process or mode. But the production of an old result by a new process is patentable.

[Cited in Tyler v. Deval, Case No. 14,307; Olcott. v. Hawkins, Id. 10,480; Winans v. Denmead, 15 How. (56 U. S.) 345; In re Maule. Case No. 9,308; Yearsley v. Brookfield, Id. 18,131; Stimpson v. Woodman, 10 Wall. (77 U. S.) 126; Sewall v. Jones, 91 U. S. 184; Dunbar v. Meyers, 94 U. S. 199; Adams v. Loft, Case No. 61; Phillins v. Detroit. 111 U. S. 608. 4 Sup. Ct. 583; Western Electric Co. v. La Rue, 139 U. S. 607, 11 Sup. Ct. 672; Appleton Manuf'g Co. v. Star Manuf'g Co., 9 C. C. A. 42, 60 Fed. 414.]

2. Where a patent was taken out for a combination and an entire process, it was *held*, that the use of a part of the process and combination was not an infringement thereof.

[Cited in Hotchkiss v. Greenwood, 11 How. (52 U. S.) 270; Brown v. Piper, 91 U. S. 41; Cochrane v. Deener, 94 U. S. 792.]
[Cited in Tillotson v. Ramsay, 51 Vt. 312.]

Case for the infringement of a patent. The suit was brought on a patent [No. 31] granted on the 18th day of March, 1841, to the plaintiff. Elias Howe, assignee of Joseph C. Smith (the asserted original inventor.) The inven-

[1] [Reported by William W. Story, Esq. Merw. Pat. Inv. 312, contains only a partial report.]

tion was described in the letters patent, to be "a new and useful improvement in the application of a material called 'palm leaf,' or 'brub grass,' to the stuffing of beds, mattresses, sofas, cushions, and all other uses for which hair, feathers, moss, or other soft and elastic substances are used." The letters patent stated, that the invention was originally secured by letters patent, dated on the 3d of March, 1833, to Joseph C. Smith, and that these latter letters patent had been cancelled on account of a defective specification, and the present letters granted to Howe, as his assignee, upon such cancellation. The breach alleged was an unlawful making and using of the invention. The defendant [Ebenezer E. Abbott], pleaded the general issue, with notice of special matters of defence.

The specification annexed to the letters patent was as follows: "To enable others skilled in the art to which this appertains to make and use my invention, I shall now proceed to describe the method of preparing or manufacturing the same. The first operation is to reduce the palm leaf, or brub grass, to filaments or fibres, sufficiently fine to be spun, which filaments or fibres I then spin, and form into a rope; which should be twisted as hard as possible, so as to kink, or cause the rope to form in balls or coils. This spinning and twisting should be done upon machines similar to those used for spinning and twisting hemp. After the aforesaid process of twisting is completed, the coils, balls, or twisted hanks, should be placed in a steam, or any other kind of oven, where they should be baked to such a degree, as to permanently fix the curl or twist in the fibres or filaments. When this effect is properly produced, the coils should be untwisted; which operation may be effected by a reverse motion of the same machinery by which it is twisted. After passing through these several preparative processes, the fibres of palm leaf or brub grass are left in a light, and durably elastic, and curly state, and are suitable for stuffing any of the various articles herein above enumerated. I shall claim as my invention the process of preparing or durably curling palm leaf, or brub grass, by reducing the leaf to small filaments, or fibres, and likewise spinning, baking or steaming, and untwisting the same; the whole operation being substantially as herein above described, and for the purpose above specified. Elias Howe. Witnesses: R. H. Eddy. Ezra Lincoln, Jr."

At the trial it appeared in evidence, that the mode stated in the specification for spinning and curling the palm leaf, after it was reduced to filaments or fibres, was precisely the same process, by the same machinery, as had long before been, and now was used to spin, and twist, and curl, hair stuffing for beds, mattresses, sofas, cushions, &c. But it did not appear, that the palm leaf was ever actually spun or curled in this way, for the

purpose of stuffing beds, &c., until about the time when the original patent to Smith was granted. There was also evidence to show, that, in point of fact, Smith did not invent the application. But that, a short time before the original patent was granted, Smith carried some of the palm leaf, cut into strips and filaments, to the shop of one Jonathan D. Bosson, a manufacturer of curled hair for beds, &c., in Roxbury; and Bosson showed him, how it might be spun and curled for beds, &c., and actually did spin and curl some of it in Smith's presence by his own hair machinery; and that Smith immediately returned home, put the same process in operation, and obtained his original patent. Smith (who was examined as a witness for the defendant) admitted, that he had carried the palm leaf to Bosson's shop; but he denied, that Bosson told him how to spin and curl it, or that he spun or curled it, on his machinery, as Bosson had stated. There was other evidence to show, that long before Smith's supposed invention, and at least ten or twelve years ago, the same process had been applied by other manufacturers of curled hair to other grasses and vegetable substances, viz., to manilla grass, to common sedge, to sisal grass, and to a substance called "coir," of which sofas are made. It was also proved, that the defendant did not bake or steam his palm leaf, after it was stripped, and spun, and curled; but stopped his process with the mere spinning and twisting. All the witnesses concurred in opinion, that the process was far more sure and perfect, so far as the curling was concerned, by baking or steaming the palm leaf after it was spun; and they thought it so essential, that the defendant's process would be defective in attaining the object, and that the curls would not be permanent without it.

B. R. Curtis, for defendant, insisted: (1) That the patent was not valid, because it was not for any new process, but merely for preparing palm leaf, to produce certain results by an old method. (2) That the patent, according to the specification, was for a combination and an entire process; and that the defendant did not use the whole combination or entire process, but a part only, which was well known and in use before.

H. Fuller and Mr. Russell, for plaintiff, contended, a contra, that the objections were not well taken.

STORY, Circuit Justice. I shall not interfere to stop the cause from going to the jury. But it strikes me, that both of the objections are well founded. In the first place, it is admitted on all sides, that there is no novelty in the process, by which the stripping, or twisting, or curling, the palm leaf, is accomplished. The same process of twisting, and curling, and baking, and steaming, has been long known and used in respect to hair used for beds, mattresses, sofas, and cushions. It

is, therefore, the mere application of an old process and old machinery to a new use. It is precisely the same, as if a coffee-mill were now, for the first time, used to grind corn. The application of an old process to manufacture an article, to which it had never before been applied, is not a patentable invention. There must be some new process, or some new machinery used, to produce the result. If the old spinning machine to spin flax were now first applied to spin cotton, no man could hold a new patent to spin cotton in that mode; much less the right to spin cotton in all modes, although he had invented none. As, therefore, Smith has invented no new process or machinery; but has only applied to palm leaf the old process, and the old machinery used to curl hair, it does not strike me, that the patent is maintainable. He, who produces an old result by a new mode or process, is entitled to a patent for that mode or process. But he cannot have a patent for a result merely, without using some new mode or process to produce it.

The other objection strikes me, upon the evidence, which is not controverted, to be equally fatal. The specification in the summing up is manifestly for the entire process or combination, and not for the several parts thereof. Now, the defendant does not use the entire process or combination, but a part thereof only, which certainly, therefore, is not a violation of the thing patented, which is the entire combination. Besides; the parts used were well known before; and, indeed, the entire process was well known before, as the evidence clearly shows. It may be, and it strikes me, that the defendant's process is, probably, far less perfect in accomplishing its purposes, than that used by the plaintiff. But that constitutes no ground for a recovery. The question is not, which is best, or is most perfect; but whether the one mode or combination is an infringement of the rights secured by the other mode or combination. There are other difficulties upon the evidence; but I venture to suggest, that unless these objections can be overcome, or the evidence controlled, they seem to be fatal.

NOTE. The plaintiff, upon these suggestions, consented to have a verdict taken for the defendant, with liberty to move for a new trial, if he should, upon further examination, think that he could change the posture of the case. Verdict for defendant, accordingly.